IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| SONJA CASEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:04-CV-00871-RWS |
| v. | : | |
| | : | |
| CLAYTON COUNTY, GA, et al, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## ORDER

Now before the Court is Defendants' Motion for Summary Judgment
[32].  After considering the entire record, the Court enters the following Order.

## Background

### I.    Factual Background

#### A.    Plaintiff's employment history

Plaintiff's involvement with Clayton County elections extends over
several decades.  In the 1980's,  Plaintiff began working for the County as a
Poll Clerk.  After working in that capacity for an unspecified period of time, she

was promoted to Assistant Manager, and then to Manager.  (Casey Dep. at 10.)

Finally, she became an elections coordinator.  In July 1993, Plaintiff was

appointed Chief Registrar of Clayton County.  (Id. at 12.)  She would go on to

be appointed to three consecutive four-year terms in that position.  (Id. at 26-

27.)  As Chief Registrar, her duties and responsibilities included sitting on the

Board of Registrars and attending monthly meetings of the Board of Registrars;

registration and certification of voters; maintenance of lists of registered voters

including the removal of deceased voters and those individuals no longer

residing in the county; preparing precinct books with lists of registered voters to

be distributed to various precincts on election day; selecting voting sites; and

splitting and mapping precincts after new precincts were approved by the

United States Department of Justice.  Additionally, Plaintiff had supervisory

authority over individuals employed by the Board of Registrars, as well as

budgetary authority for that office.  (Pl.'s Statement of Material Facts [47-2] at

¶ 4, 6-8 [hereinafter "Pl.'s SMF".)  As the Chief Registrar for Clayton County,

Plaintiff reported to the Clayton County Board of Registrars.  (Defs.' SMF ¶ 7.)

The Chief Probate Judge had the authority to remove Plaintiff from her position

2

as Chief Registrar at any time for cause after notice and a hearing. (Defs.' SMF ¶ 8.)

At some point during her tenure as Chief Registrar, Plaintiff hired Ms. Bright in the Voter Registration Office at the suggestion of Defendant Bray. Plaintiff understood that Defendant Bray wished Ms. Bright to be hired because she is African-American.  (Pl.'s SMF ¶ 9; Defs.' Statement of Material Facts [35] at ¶ 10 [hereinafter "Defs.' SMF"].)  During Ms. Bright's employment, Plaintiff served as her supervisor and was responsible for training Ms. Bright in her duties.  (Pl.'s SMF ¶ 10.)

**B.     The Clayton County Board of Elections and Registration and the Elections Director position**

Prior to 2003, the Chief Judge of the Clayton County Probate Court served as the Elections Superintendent for Clayton County and administered the elections process.  (Defs.' SMF ¶ 1, 9.) The voter registration process for Clayton County was administered by the Board of Registrars and the office of the Registrar, and it was responsible for the registration of voters and the absentee balloting procedures.  (Defs.' SMF ¶ 10.)  On or about June 4, 2003, however, the Georgia General Assembly passed, pursuant to O.C.G.A. §

3

21-2-40, Senate Bill 360 ("the Act") which provided for the creation of a Board of Elections and Registration for Clayton County. (Defs.' SMF ¶¶ 11-12.) The newly created Board of Elections assumed the powers and duties of the former Clayton County Election Superintendent. (Defs.' SMF ¶ 12.) In addition, the Board of Elections replaced the Board of Registrars, Plaintiff's previous employer, and assumed its responsibilities for registering voters and overseeing absentee balloting procedures. (Id.)

Under the Act, the Clayton County Commission was given authority to appoint five individuals to serve on the Board of Elections, and in this case, each of the five members of the Clayton County Commission appointed a member of the Board of Elections who would serve a term consistent with that of the appointing Commission member. (Defs.' SMF ¶¶ 13, 15.) In addition, the Act provided the Board of Elections with the power to select and appoint, subject to approval by the Clayton County Commission, an administrative Elections Director ("the Director"). (Defs.' SMF ¶ 16.) The Director was to be appointed or retained by the Board of Elections based upon a job description drawn by the Board of Elections in concert with the County Personnel Office within sixty days of its members being able to take official action. But, in the

4

event that the Board of Elections failed to select a Director, an Interim Director would be appointed by the County Commission.  (Defs.' SMF ¶¶ 20.)  The Board of Elections failed to select a Director within the prescribed sixty-day period, and as a result, Defendant Bray requested that Plaintiff serve as the Interim Director.  (Defs.' SMF ¶¶ 21, 24.)

On November 11, 2003, the Board of Elections was presented with, and adopted, a job description for the position of Director drafted by Defendant Thompson in conjunction with the Clayton County Personnel Department.  (Defs.' SMF ¶¶ 30, 32.)  The position was advertised on the County website and various other job posting boards, and as a result, seventeen individuals, including Plaintiff and Ms. Annie Bright, applied.  (Defs.' SMF ¶¶ 33, 35.)  On December 9, 2003, the Board of Elections met to establish criteria for selecting the Director, and determined that each Board member would review the resumes of all applicants, determine their top five candidates, evaluate those five candidates based on the applicant's administrative skills, community outreach, knowledge of elections, instruction skills, and education and/or experience, and then meet with other Board members to discuss their selections.  (Defs.' SMF ¶ 41, 46, 54.)  On December 29, 2003, the Board of Elections

reconvened to discuss their selections for the position of Director.  According to the meeting minutes, after discussing the qualifications of the applicants, the Board of Elections unanimously selected Ms. Bright for the Director position and resolved to submit her name to the County Commission for approval.[1] However, Plaintiff had the support of Mr. Sligh and, but for his learning that Plaintiff lacked sufficient votes to be selected, he would have voted for Plaintiff.  (Defs.' SMF 56; Defs.' Ex. 19 [36-20].)  No interviews were conducted.  (Defs.' SMF ¶ 55.)

On January 6, 2004, the Clayton County Commission held its regular business meeting and Ms. Bright's name was presented as the Board of Elections' selection for the position of Director.  (Defs.' Ex. 20 [36-21] at 5-6.) The Commission, however, voted to defer consideration of the Board of Elections' nominee for Director pending a joint meeting of the County Commission and the Board of Elections to discuss the selection process.  (Id.)

---

[1] Defendants contend that the vote to nominate Ms. Bright was unanimous.  (See Defs.' Mem. in Supp. of Mot. for Summ. J. [36-1]; Defs' Ex. 19 36-20].)  Plaintiff, citing the deposition of Mr. Sligh, states that the vote was 4 to 1 in favor of Ms. Bright, with Mr. Sligh voting for Plaintiff.  (See Pl.'s Mem. in Opp'n to Mot. for Summ. J. [47-1] at 3.)  Mr. Sligh testified in his deposition  that, although he was strongly inclined to vote for Plaintiff (Sligh Dep. [36-38] at 9-10), when it became apparent that she lacked sufficient support, "rather than just creat[ing] a stir," he assented to the nomination of Ms. Bright, thereby making the vote unanimous.  (Id. at 10.)

6

On January 13, 2004, both the County Commission and the Board of Elections

met to discuss Ms. Bright's nomination.  (Id.)  After that meeting, it appears

that the County Commission voted 3 to 2 to approve Ms. Bright for the Director

position.

On March 29, 2004, Plaintiff Sonja Casey filed suit against Defendants

Clayton County; its County Commissioners Crandle Bray, Carl Rhodenizer, and

Virginia Gray, each in their individual and official capacities; the Clayton

County Board of Elections and Registration ("Board of Elections"); and Board

of Elections members Roberta Abdul-Salaam, Ruth Ashe, Bob Bolia, George

Sligh, and Arthur Thompson, each in their individual and official capacities.

Plaintiff is a Caucasian female who, at the time of the events giving rise to this

suit, was sixty years old.  She alleges that Defendants wrongfully failed to

select her for the position of Director because of her race and her age.  She

alleges that her nonselection violates the Equal Protection Clause, 28 U.S.C.

§1981, Title VII, and the Age Discrimination in Employment Act ("ADEA"),

and brings this action under 28 U.S.C. § 1981, § 1983, Title VII, and the

ADEA.  Plaintiff seeks monetary relief, including punitive damages, as well as

equitable relief in the form of reinstatement and front pay.  Defendants have

moved for summary judgment on all claims.

## Discussion

## I.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment

shall be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.' "

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden then shifts to the non-movant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of

8

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The applicable substantive law

identifies which facts are material.  Id. at 248.  A fact is not material if a dispute

over that fact will not affect the outcome of the suit under the governing law.

Id.  An issue is genuine when the evidence is such that a reasonable jury could

return a verdict for the non-moving party.  Id. at 249-50.

In determining a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.

Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted."

Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita,

475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the

AO 72A
(Rev.8/82)

nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

## II.     Preliminary Matters

### A.     Particular Defendants entitled to summary judgment

Plaintiff has conceded that certain Defendants are entitled to be dismissed from this suit.  First, Plaintiff concedes that she lacks any evidence that Defendants Bray, Rhodenizer, Gray, and Sligh intentionally discriminated against her on the basis of her age or race and that they are entitled to judgment as a matter of law.  (See Pl.'s Br. in Opp'n to Mot. for Summ. J [47-1] at 1 n.1.) Second, because Defendant George Sligh supported Plaintiff for the position in question, Plaintiff concedes that he could not have harbored a discriminatory motive, and as such, he should be dropped from this action.[2] (See id. at 21 n.4.) Accordingly, insofar as Defendants move for summary judgment on these claims in the above listed capacities, the motions are hereby **GRANTED**.

---

[2] Defendants make other arguments which apply equally to Defendant Sligh.  In light of Plaintiff's concession, and having already concluded that all claims against Defendant Sligh should be dismissed, the Court will not discuss him further.

10

**B.     Dismissal of Plaintiff's claims against Defendants in their official capacity**

Defendants contend that all claims against Defendants Bray, Gray, Ash, Bolia, Abdul-Salaam, and Thompson in their official capacity should be dismissed as redundant of Plaintiff's claims against the governmental unit. (Defs.' Br. in Supp. of Mot. for Summ. J. at 32.)  Plaintiff offers no opposition to Defendants' contention.

The Eleventh Circuit has held that "[t]here no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."  Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir.1991); see also Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell, local government units can be sued directly for damages and injunctive or declaratory relief." (citation omitted)); Schmidling v. City of Chicago, 1 F.3d 494, 495 n.1 (7th Cir. 1993) (holding claims against mayor in official capacity redundant in suit against city seeking declaratory and injunctive relief). Plaintiff has named Clayton County as a Defendant in this action, and as such,

11

her claims against these individuals in their official capacity are redundant.
Accordingly, as to Plaintiff's claims against Defendants Bray, Gray, Ash, Bolia,
Abdul-Salaam, and Thompson in their official capacity, Defendants' Motion for
Summary Judgment is hereby **GRANTED**.

### III.    Age Discrimination Claims Under the ADEA

Plaintiff alleges that Defendants discriminated against her on the basis of
her age.  "In an employment discrimination case, the plaintiff must produce
sufficient evidence to support an inference that the defendant-employer based
its employment decision on an illegal criterion."  Benson v. Tocco, Inc., 113
F.3d 1203, 1207 (11th Cir. 1997).  "In proving an age discrimination claim, a
plaintiff can establish a prima facie case of discrimination through either direct
evidence of discrimination or a variation of the four-part test outlined in
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d
668 (1973) for circumstantial evidence."  Damon v. Fleming Supermarkets of
Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999).

In this case, Plaintiff presents no direct or statistical evidence that her
nonselection was because of her age.  Therefore, Plaintiff relies on
circumstantial evidence, and as such, the Court must assess her claims under the

now familiar burden-shifting framework established in <u>McDonnell Douglas</u> and

<u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct.

1089, 67 L. Ed. 2d 207 (1981).  <u>See</u> <u>Combs v. Plantation Patterns</u>, 106 F.3d

1519, 1527 (11th Cir. 1997).  "Under that framework, the plaintiff has the initial

burden of establishing a prima facie case of discrimination."  <u>Id.</u> at 1527-28.

Generally, a plaintiff establishes a prima facie case of age discrimination by

showing that she was (1) a member of the protected age group; (2) qualified for

the position in question; (3) subjected to an adverse employment action; and (4)

a similarly situated individual outside the protected class either replaced, or was

treated more favorably than, the plaintiff.  <u>Chapman v. AI Transport</u>, 229 F.3d

1012, 1024 (11th Cir. 2000).  Establishing a prima facie case creates a

presumption that the plaintiff was the victim of unlawful discrimination.  <u>Id.</u>  "If

the trier of fact believes the plaintiff's evidence, and if the employer is silent in

the face of the presumption, the court must enter judgment for the plaintiff

because no issue of fact remains in the case."  <u>Id.</u>

        The Court concludes that Plaintiff has failed to establish a prima facie

case of age discrimination.  Plaintiff has established the first three elements of

her prima facie case:  she is a member of the protected class; she was qualified

for the position; and she was subjected to an adverse employment action.  But, Plaintiff has failed to establish that she was either denied employment in favor of, or replaced by, a significantly younger individual.  Plaintiff's complaint alleges no facts supporting this element of her prima facie case under the ADEA.  Moreover, when confronted with Defendants' Motion for Summary Judgment, Plaintiff has failed to direct the Court to any evidence regarding Ms. Bright's age at the time the decision was made.[3]  Although such evidence may exist somewhere in the record, it is not the Court's duty to comb the record to attempt to find reasons to deny a motion for summary judgment.  Powers v. CSX Transp., Inc., 190 F. Supp. 2d 1284, 1286 n.2 (S.D. Ala. 2002). Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's ADEA claims is hereby **GRANTED**.

**IV.    Race Discrimination Claims**

> **A.    Relationship between Plaintiff's claims under § 1981, § 1983, & Title VII**

---

[3] Although Plaintiff states in her brief in opposition to Defendants' motion that "Casey was passed over in favor of a lesser qualified African-American, younger, employee," that statement is unsupported and cites no evidence in the record regarding Ms. Bright's age.

14

Plaintiff has asserted claims against Defendants under § 1981, § 1983, and Title VII for race discrimination arising out of her nonselection for the position of Director.  It is well-established in this Circuit that § 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981.  Jett v. Dallas Indep. Sch. Dist., 91 U.S. 701, 733, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000) (holding that Civil Rights Act of 1991 did not legislatively overrule the interpretation of § 1981 contained in Jett).  Accordingly, Plaintiff's § 1981 claims against Defendants merge into her § 1983 claims and Defendants' Motion for Summary Judgment on Plaintiff's § 1981 claims as independently sustainable causes of action is hereby **GRANTED**.

With respect to Plaintiff's Title VII claims, however, a different result obtains.  In this regard, the Eleventh Circuit has held that claims under § 1983 and Title VII may proceed as parallel actions.  See Pennington v. City of Huntsville, 261 F.3d 1262, 1265 (11th Cir. 2001); Johnson v. City of Fort Lauderdale, 148 F.3d 1228, 1231 (11th Cir. 1998).  "[W]hen section 1983 is used as a parallel remedy for violation . . . of Title  VII , the elements of the two causes of action are the same" and the claims are analyzed under same

15

framework.  Underwood v. Perry County Comm'n, 431 F.3d 788, 794 (11th

Cir. 2005) (quoting Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir.

1982)).  As such, Plaintiff's claims for race discrimination under § 1983 and

Title VII will be allowed to proceed as parallel claims.  Because Plaintiff's §

1983 and Title VII claims share a common analytical framework, however, the

Court will first address the merits of Plaintiff's Title VII claim, turning only to

the more thorny issue of municipal liability if Plaintiff can establish the

existence of a genuine issue of fact as to whether her nonselection was because

of her race.

   **B.    Claims under Title VII**

   Title VII provides: "It shall be an unlawful employment practice for an

employer . . . to fail or refuse to hire . . . any individual . . . because of such

individual's race."  42 U.S.C. § 2000e-2(a).  Under the 1991 amendments to

this Act, "an unlawful employment practice is established when the

complaining party demonstrates that race . . . was a motivating factor for any

employment practice, even though other factors also motivated the practice."

42 U.S.C. § 2000e-2(m).

### 1.  Defendants' liability in their individual capacity

As an initial matter, insofar as Plaintiff seeks to recover against Defendants Abdul-Salaam, Ash, Bolia, and Thompson in their individual capacities for violations of Plaintiff's rights under Title VII, these claims fail as a matter of law.  The Eleventh Circuit has expressly held that " '[t]he relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.' "  Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (quoting Busby, 931 F.2d at 772).  Therefore, "individual capacity suits under Title VII are . . . inappropriate" in an action alleging violations of Title VII by a municipal employer.  Busby, 931 F.2d at 772.  Accordingly, Defendants Abdul-Salaam, Ash, Bolia, and Thompson's Motion for Summary Judgment is hereby **GRANTED** on Plaintiff's Title VII claims against them in their individual capacities.

### 2.  Plaintiff's remaining Title VII claims

Plaintiff presents no direct or statistical evidence of race discrimination. Therefore, as discussed above in the context of her ADEA claim, Plaintiff relies on circumstantial evidence, and as such, her claims must be evaluated under the

17

burden-shifting framework established in <u>McDonnell Douglas</u> and <u>Burdine</u>.

Under this analytical framework, the plaintiff has the initial burden of

establishing a prima facie case of unlawful race discrimination by a

preponderance of the evidence.   <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Hall v.</u>

<u>Ala. Ass'n of Sch. Bds.</u>, 326 F.3d 1157, 1166 (11th Cir. 2003).  In the reverse

discrimination context, a plaintiff must prove (1) that she belongs to a class; (2)

that she applied for and was qualified for a job; (3) that she was rejected for the

job; and (4) that the job was filled by a minority group member.  <u>Shealy v. City</u>

<u>of Albany</u>, 89 F.3d 804, 806 (11th Cir. 1996).  Once the plaintiff establishes a

prima facie case, the burden is shifted to the employer who must "proffer a

legitimate, non-discriminatory reason for the adverse employment action.  The

employer's burden is exceedingly light."  <u>Meeks v. Computer Assoc. Int'l.</u>, 15

F.3d 1013, 1021 (11th Cir. 1994).

Once the employer proffers a legitimate, non-discriminatory reason, the

plaintiff--to survive summary judgment--"has to come forward with evidence,

including the previously produced evidence establishing a prima facie case,

sufficient to permit a reasonable fact finder to conclude that the reasons given

by the employer were not the real reasons for the adverse employment

18

decision." <u>Combs</u>, 106 F.3d at 1528.  "To show that the employer's reasons were pretextual, the plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' " <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 726 (11th Cir. 2004) (quoting <u>Combs</u>, 106 F.3d at 1538.  "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." <u>Chapman</u>, 229 F.3d at 1024-25.

In employment discrimination cases in general, and specifically in reviewing Defendants' decision to select Ms. Bright over Plaintiff, the Court is guided by an important principle:  It must not judge the wisdom of Defendants' decision, but rather limit its inquiry to whether Defendants acted for an improper purpose.  As the Eleventh Circuit has repeatedly stressed, " '[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions.' " <u>Chapman</u>, 229 F.3d at 1030 (quoting <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991)).  Courts are not to

AO 72A
(Rev.8/82)

second-guess the business decisions of employers, even when they are manifestly unreasonable or unfair, but rather should limit their inquiry to whether an employer has based its decision on an impermissible factor.  See id.; Damon, 196 F.3d at 1361 ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law.  We are not in the business of adjudging whether employment decisions are prudent or fair." (internal citation omitted)); Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Plaintiff has made out a prima facie case of race discrimination.  Plaintiff is Caucasian, she applied for the position of Director, she was qualified for that position, and the position was awarded to Ms. Bright, an African-American. Because each Board of Elections member testified as to the basis for their individual decision to nominate Ms. Bright for the Director position, the Court will examine each member's proffered reason separately, immediately turning its attention to Plaintiff's attempts to show that the individual Defendants'

reasons were pretextual.  Wascura v. City of South Miami, 257 F.3d 1238, 1243 (11th Cir. 2001).  After doing so, the Court will then consider other evidence that persons involved in the decisionmaking process were influenced by considerations of race.[4]

### a.  Roberta Abdul-Salaam

Ms. Abdul-Salaam testified that she voted to select Ms. Bright over Plaintiff based on several factors.  First, Ms. Abdul-Salaam testified that she believed Ms. Bright to be the better candidate based on her observations of Ms. Bright's work.  Specifically, she testified that Ms. Bright "was the one that we saw that was out with the volunteers, that was doing the training, that was visible in the community. . . .  She was the one that answered questions.  And that, to me, had more of what you needed for [the Director] position."  (Abdul-Salaam Dep. at 37.)  She further testified that "looking at [Ms. Bright's] qualifications and the past job histories and also, knowing firsthand, that she

---

[4] Unfortunately, the parties are at best unclear about which persons or political body (or bodies) constitute the relevant decisionmaker within the meaning of Title VII. The record before the Court leaves the issue amenable to more than one interpretation. Consequently, the Court, for purposes of this Order, does not decide the issue.  Instead, it evaluates the record to determine whether, no matter which person or body is ultimately found to be the decisionmaker, Plaintiff has demonstrated the existence of a triable issue of fact.  For the reasons that follow, the Court concludes that she has.

21

was the one that was actually doing the hands-on staff [work] in the office was what made her the choice . . . for me." (Id. at 37-38.)  Second, she testified that she had received complaints regarding Plaintiff's performance from a State Representative, Darryl Jordan, as well as from other city officials and members of the public, although she was unable to identify which officials or citizens had made those complaints.  (Id. at 39-40, 51.)  Finally, Ms. Abdul-Salaam testified that she took issue with Plaintiff's handling of voter registration by convicted felons, that, in her view, Plaintiff improperly refused to allow these individuals to register to vote, and that Plaintiff's actions in this regard were contrary to state law. (Id. at 58-59.)

In an effort to show pretext, Plaintiff first relies on her relative qualifications, noting that, although Ms. Abdul-Salaam stated that she relied on qualification and job histories in selecting Ms. Bright, Plaintiff in fact has significantly more relevant experience.  In this regard, Plaintiff points to her work history with Clayton County elections going back more than two decades, and specifically (1) her initial work as a poll clerk beginning the in the 1980's; (2) her promotion to Assistant Manager and then Manager; (3) her selection for the position of Elections Coordinator; (4) her appointment as to three

consecutive four-year terms as Chief Registrar of Clayton County which
entailed budgetary responsibility, as well as for the selection of polling sites;
and (5) her hiring and supervision of Ms. Bright.  (Pl.'s Br. in Opp'n to Mot. for
Summ. J. at 10-12.)

Where a plaintiff seeks to establish pretext solely through an examination
of relative qualifications, the Eleventh Circuit has held that the "disparities in
qualifications must be of such weight and significance that no reasonable
person, in the exercise of impartial judgment, could have chosen the candidate
selected over the plaintiff for the job in question."  Cooper, 390 F.3d at 732.
But cf.  Ash v. Tyson Foods, Inc., ___ U.S. ___, 126 S. Ct. 1195, 1197, 163 L.
Ed. 2d 1053 (2006) (per curiam) (citing Cooper with approval but reversing
Eleventh Circuit's application of "slap you in the face" standard, noting that
"[u]nder this Court's decisions, qualifications evidence may suffice, at least in
some circumstances, to show pretext," although declining to elucidate proper
standard to be applied).  "However, where the qualifications disparity is not the
sole basis for arguing pretext, the disparity need not be so dramatic to support
an inference of pretext."  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768
(11th Cir. 2005).  In this case, Plaintiff had significant elections experience in

23

the County and had, in fact, been serving as the Interim Director for a period of several months prior to her nonselection.  In view of Plaintiff's other evidence supporting a finding of pretext, the Court concludes that Plaintiff's relative qualifications and prior service in the position in question may constitute some evidence potentially probative of pretext.

Second, Plaintiff points to the fact that Ms. Abdul-Salaam never raised the issue of Representative Jordan's complaint with her, and as such, the jury could find that reliance on it was pretextual.  (Id. at 13.)  As a general matter, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."  Damon, 196 F.3d at 1363 n.3; see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (explaining that "no matter how mistaken [a] firm's managers, the ADEA does not interfere").  That said, "[a]n employer's lack of concern about the accuracy of its decision may support a claim of pretext, particularly where the possibility of error is great and confirmation could be easily obtained."  Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1501 (11th Cir. 1985.)  While not sufficient to establish pretext as a matter of law, see id., the Court cannot say, at this stage of the litigation (where

24

all reasonable inferences must be drawn in favor of Plaintiff), that her failure to

verify the facts of the incident which gave rise to the complaint is wholly

without probative value as to discriminatory intent.

Finally, Plaintiff points to what she terms "evidence that racial

considerations dominate Ms. Abdul-Salaam's decisionmaking." (Id.)  Much of

Plaintiff's evidence in this regard adds little to the pretext calculus.  But,

Plaintiff does point to a specific instance which could support a finding of

pretext.  Specifically, Plaintiff testified about a conversation she had with Ms.

Abdul-Salaam regarding Plaintiff and Ms. Bright's joint decision to decline to

rehire an African-American precinct manager who failed to retrieve the memory

cards upon which the vote counts were stored.  In this conversation, Ms. Abdul-

Salaam overruled their decision on the grounds that "the county needed more

black precinct managers, not less."  (Casey Dep. at 119-120.)  While far from

direct evidence of discrimination in this case, these statements tend to indicate

Ms. Abdul-Salaam's proclivity to consider race as a factor in making

employment decisions, and as such, are probative of pretext.  See Bass v. Bd. of

County Comm'rs, Orange County, 256 F.3d 1095, 1104-05 (11th Cir. 2001)

(statement that "county would continue to hire based on color," while not direct

evidence, may be probative of pretext when considered in light of other evidence in case).

Simply stated, viewing all evidence, and drawing all reasonable inferences in favor of Plaintiff as the non-moving party, the Court concludes that a genuine issue of fact remains as to whether Ms. Salaam discriminated against Plaintiff on the basis of her race.[5]

b.  Ruth Ash

Ms. Ash testified that she voted to select Ms. Bright over Plaintiff because, based on her personal observation of both candidates, Ms. Bright appeared "more knowledgeable as to how you should do certain things or she presented it in a more knowledgeable way."  (Ash Dep. at 31.)  When

---

[5] Plaintiff also points to a newspaper article in which Ms. Abdul-Salaam is quoted as saying that she "helped orchestrate" the election of more minority candidates in Clayton County.  (Abdul-Salaam Dep. at 52-53.)  Ms. Salaam testified that she did not recall making those statements and questioned the accuracy of the report.  (Id.) Defendants object to the consideration of these statements on the grounds that the statements are inadmissible hearsay.  Although the consideration of newspaper articles at the summary judgment stage is not per se improper, the Court may do so where there is some indication that the hearsay statements can be reduced to admissible form at trial. See, e.g., McMillian v. Johnson, 88 F.3d 1573, 1584-85 (11th Cir. 1996).  As Plaintiff has failed to provide any basis for the Court to conclude that they could be so reduced, the Court declines to consider them now.

repeatedly asked to provide the specific factual basis for that determination, Ms. Bright stated:

> As I said, the only thing I can think of was, as we talked about actions or as we looked at things that had to be done as far as the elections board is concerned is that she presented them in a more knowledgeable way than [Plaintiff], her presentation was better, that's the best I can give you.

(Id. at 31-32.)

The Eleventh Circuit has made clear that a subjective reason can be a legitimate nondiscriminatory reason, provided that "the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman, 229 F.3d at 1034. Thus, by way of example, the Chapman Court explained that to merely state that an individual was not hired because the employer "did not like his appearance" would be insufficient to satisfy the defendant's burden to produce a legitimate nondiscriminatory reason for its decision. Id. In contrast, for the defendant to proffer that it

> "did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or "because he had his nose pierced," or "because his fingernails were dirty," or "because he came to the interview wearing short pants and a T-shirt," the defendant would [satisfy its burden to present] a "clear

27

and reasonably specific" basis for its subjective opinion-the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant. The burden would then shift back to the plaintiff to offer sufficient evidence for a reasonable factfinder to find that the defendant's reason was pretext for discrimination.

Id.

The Court finds Ms. Ash's explanation that Ms. Bright "appeared more knowledgeable" and that "her presentation was better," without more, to be analogous to proffering that an individual was not hired based on "his appearance." Therefore, such an explanation is insufficient to satisfy the requirement that " 'the defendant's explanation of its legitimate reasons must be clear and reasonably specific' so that 'the plaintiff be afforded a full and fair opportunity to demonstrate pretext.' " Id. (quoting Burdine, 450 U.S. at 258). Accordingly, the Court concludes that Defendants have not shown the absence of an issue of fact as to whether Ms. Ash acted with discriminatory intent in refusing to select Plaintiff for the Director position.

28

### c.  Arthur Thompson

Mr. Thompson testified that he was unable to recall the basis for his decision to select Ms. Bright over Plaintiff.  (See Thompson Dep. at 7-8.) Although he directed Plaintiff's counsel to the minutes of the Board of Elections meeting, the basis of his decision is not reflected in those minutes. (See Defs.' Ex. 19, 22.)  Therefore, Defendants have not shown the absence of a genuine issue of fact as to whether Mr. Thompson acted with discriminatory intent.[6]

### d.  Robert Bolia

Mr. Bolia testified that he viewed Plaintiff and Ms. Bright as equally qualified for the Director position.  (Bolia Dep. Defs.' Ex. 39 at 12.)  Mr. Bolia noted, however, that he received complaints from two individuals regarding Plaintiff--Ms. Abdul-Salaam and Ms. Smith.  With respect to Ms. Abdul-Salaam's complaint, Mr. Bolia testified that it  "had no influence" on his

---

[6] Insofar as Plaintiff seeks to rely on alleged statements made by Mr. Thompson to a third party regarding the need to employ additional black poll workers, these statements are hearsay.  They are not in admissible form and Plaintiff has not provided any basis for the Court to conclude that they would be capable of reduction to admissible form at trial.  As such, the Court declines to consider them on summary judgment.  See Fed. R. Civ. P. 56; Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.").

decision, and in fact, "may have had an opposite effect." (Id. at 13.) In contrast, he viewed Ms. Smith's complaint seriously, and it was this complaint which was the determinative factor in his decision to select Ms. Bright. (Id. at 14.) Other than Plaintiff's assertion that it was Abdul Salaam's complaint which led to Mr. Bolia's decision--a proposition that is directly contradicted by Mr. Bolia's testimony--Plaintiff has offered no evidence to indicate that his proffered reasons were pretextual.[7] In short, Plaintiff has failed to establish the existence of an issue of fact as to whether Mr. Bolia discriminated against her on the basis of her race.

### e.  Other evidence of pretext

Plaintiff points to statements by a number of people who were, in her words, "in the know," about the selection process, and which she contends indicate that they were aware that the process was infected by racial considerations.  Because most of these individuals were neither themselves county policymakers nor directly involved in the decision to select Ms. Bright,

---

[7] Plaintiff's states: "What tipped the scale in favor of Bright was that another board member expressed that she had disagreements with [Plaintiff].  That board member was Roberta Abdul-Salaam" (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 21.)  This is directly contradicted by the record.  (See Bolia Dep. at 12-14.)

much of this evidence adds little, if anything, to the assessment of pretext.
Nevertheless, the Court does note several particular instances which are
relevant to the issues at hand.

First, Plaintiff testified that shortly before her nonselection, she met with
Defendant Bray, a member of the County Commission and the individual who
had placed Plaintiff in the Interim Director position, as well as Gerald
Matthews.  In that meeting, Defendant Bray informed Plaintiff that her
prospects for selection "[don't] look good," and affirmatively indicated that he
was "getting the pressure from the black community to put a black in."  (Casey
Dep. at 74.)  When questioned about this by Plaintiff, he requested that she
"resign [her] job to take the pressure off."  (Id. at 104.)  He then stated: "Sonja,
the way I see it, it would just be better for you to resign and let this die down."
(Id at 105-106.)

Second, Plaintiff testified regarding a conversation she had with Charlie
Griswell, also a member of the County Commission.  In that conversation, he
informed Plaintiff that he "knew [her nonselection] was a racial thing, [that] he
was aware of the race-involved situation . . ., and that he would not vote for it."
(Id. at 105.)  Because both of these individuals served as County Commission

members  and possessed final authority as members of the Commission to approve or disapprove of the Board of Elections' nominee, and because appointed members of the Board of Elections, played, at best, an uncertain role in the selection process, the Court cannot say, at the summary judgment stage, that these statements are without probative value.[8]

In sum, the Court finds a reasonable juror could conclude, on the basis of the above-discussed evidence as well as Plaintiff's prima facie case, that the proffered reasons for Plaintiff's nonselection were pretextual.[9]  As such, Defendants have failed to establish the absence of any genuine issue of fact regarding whether Plaintiff's nonselection violated Title VII's prohibitions on racial discrimination in employment.  Accordingly, the County Defendants'

---

[8] These statements are similarly, and perhaps more particularly, relevant to the Court's discussion of § 1983 municipal liability under the ratification theory.

[9] As the Court noted above, no evidence or argument has been presented by Defendants as to which body–the Board of Elections or the County Commission–served as the relevant decisionmaker within the meaning of Title VII.  In view of this glaring deficiency in Defendants' filings, the Court is unable, on the record before it, to determine whether Plaintiff's Title VII claims against Clayton County are , as a matter of law, foreclosed.  Because Defendants have failed to carry their burden on summary judgment of establishing that they are entitled to judgment as a matter of law, and because sufficient evidence in the record indicates that at least some of the individuals involved in the decision not to select Plaintiff may have acted with discriminatory intent, a genuine issue of fact remains for trial.

AO 72A
(Rev.8/82)

Motion for Summary Judgment on Plaintiff's Title VII claims is hereby

**DENIED**.

### C.    Claims under § 1983

A plaintiff has a cause of action against any person who, under color of

law, deprives that plaintiff of any rights, privileges, or immunities secured by

the Constitution and laws of the United States.  42 U.S.C. § 1983.  "In order to

prevail in a civil rights action under section 1983, 'a plaintiff must make a

prima facie showing of two elements:  (1) that the act or omission deprived

plaintiff of a right, privilege or immunity secured by the Constitution or laws of

the United States, and (2) that the act or omission was done by a person acting

under color of law.' " Marshall County Bd. of Educ. v. Marshall County Gas

Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of

Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).

a.  Liability of Clayton County

Defendant Clayton County and the Board of Elections (the "County

Defendants") raise several arguments in support of their position that the

County may not be held liable under § 1983.  The County Defendants contend

that Plaintiff cannot establish their liability under § 1983 because she has failed

33

to show that her injuries resulted from an official County policy or custom. (See Defs.' Br. in Supp. of Mot. for Summ. J. at 11-17.)  In this regard, the County Defendants argue that Plaintiff cannot establish the existence of an unconstitutional policy because she has failed to point to any unconstitutional (1) officially promulgated written policy (see id. at 12-13); (2) custom which is sufficiently persistent and widespread that it has gained the force of law (see id. at 13-15); or (3) single act of County official or officials with final policy-making authority (see id. at 15-17).

The County Defendants' first two arguments are without merit.  First, the "policies" of Clayton County which may suffice to establish § 1983 liability are not limited to its official written policies.  See Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1480 (11th Cir. 1991).  Second, Plaintiff does not now allege, nor has she ever, that her nonselection resulted from a widespread and pervasive unconstitutional practice which had gained the force of law. Rather, it is Plaintiff's position that the decision to hire Ms. Bright was based on Plaintiff's race and that this decision was made by officials with final policy-making authority.  (See Pl.'s Br. in Opp'n to Mot. for Summ. J. at 25-28.)  It is the resolution of this issue upon which the County's liability will depend.

34

A municipality, such as Clayton County, may not be held liable on a theory of respondeat superior.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Rather, a municipality may be held directly liable under § 1983 for "constitutional deprivations resulting from (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance. . . ."  Martinez v. City of Opa-Locka, Fla., 971 F.2d 708, 714 (11th Cir. 1992).  That is to say, "[a] 'local government may only be held liable under Section 1983 if action pursuant to official . . . policy of some nature caused a constitutional tort.' " Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006) (quoting Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002) (per curiam)) (internal quotation omitted).  Under appropriate circumstances, a single decision by an official policymaker can establish the existence of an unconstitutional municipal policy.  Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); accord Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997); Martinez, 971 F.2d at 713. As the Supreme Court has explained: "where action is directed by those who establish governmental policy, the municipality is equally responsible whether

AO 72A
(Rev.8/82)

that action is to be taken only once or to be taken repeatedly." <u>Scala</u>, 116 F.3d at 1399 (quoting <u>Pembaur</u> 475 U.S. at 481).

"[O]nly those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1342 (11th Cir. 1994) (quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (plurality opinion) (internal quotation omitted)).  "Municipal liability may arise with regards to an employment decision, . . . provided that the decisionmaker 'possesses final authority to establish municipal policy with respect to the action ordered.' " <u>Quinn v. Monroe County</u>, 330 F.3d 1320, 1326 (11th Cir. 2003) (quoting <u>Pembaur</u>, 475 U.S. at 481).  "[W]hether a particular official has 'final policymaking authority' is a question of state law." <u>Jett</u>, 491 U.S. at 737 (quoting <u>Praprotnik</u>, 485 U.S. at 123).  The "identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the [court]." <u>Id.</u>  In making this determination, the court must consider "the relevant legal materials, including state and local positive law, as well as " 'custom or usage' having the force of law." <u>Id.</u> (quoting <u>Praprotnik</u>, 485 U.S. at 124 n.1).  "Once those officials who

have the power to make official policy on a particular issue have been

identified, it is for the jury to determine whether their decisions have caused the

deprivation of rights at issue." Id.

Additionally, the Eleventh Circuit has held that a municipality may be

held liable under § 1983 under a ratification theory. "County liability on the

basis of ratification exists when a subordinate public official makes an

unconstitutional decision and when that decision is then adopted by someone

who does have final policymaking authority." Matthews, 294 F.3d at 1297. As

the Eleventh Circuit has repeatedly made clear, however,

> [t]he final policymaker . . . must ratify not only the
> decision itself, but also the unconstitutional basis for it.
> Gattis v. Brice, 136 F.3d 724, 727 (11th Cir.1998) ("A
> policymaker's approval of an unconstitutional action
> can constitute unconstitutional county policy only when
> the policymaker 'approve[s] a subordinate's decision
> and the basis for it.' ") (emphasis in original) (quoting
> Praprotnik, 108 S. Ct. at 926).

Id. at 1297-98; see also Campbell, 434 F.3d at 1313 ("[I]n order for a

municipality to be liable under a ratification theory, the final policymaker must

ratify not only the decision of its member with an unconstitutional motive, but

also the unconstitutional basis itself.").

37

The gravamen of Plaintiff's complaint is that a majority of the Board of Elections discriminated against her on the basis of her race when it voted to select Ms. Bright for the position of Director.  Assuming that they did so, their action would violate Plaintiff's rights under the Constitution.  But, establishing that these individuals acted in an unconstitutional manner is only sufficient to establish the County's liability under Monell if either (1) the Board of Elections possesses final policymaking authority for the County or (2) the improper decision of the Board of Election was ratified by the policymaking entity with full knowledge of its improper basis.  This case presents difficult issues of municipal liability involving a unique entity created by state law, and in the Court's view, neither party has adequately addressed these issues.  For example, the whole of Plaintiff's argument consists of the following paragraph:

> In the present case it is undisputed that the Board of Elections and Registration was the final policy maker with respect to the selection of the Director of Elections and Registration position. State law (Senate Bill 360) in effect made the Board of Elections and Registration the final policymaking body for Clayton County as concerns, inter alia, the selection of the Director. They set the qualifications for the position. They decided on the process to utilize. They drafted the job description. The Board was the decision maker with respect to Casey's non-selection. And, the Director of Elections

38

and Registration serves at the pleasure of the Board.
(Senate Bill 360).

However, Plaintiff omits a critical provision of the enabling legislation. Senate Bill 360 provides: "The [Board of Elections] shall be responsible for the selection and appointment of a[ Director], <u>subject to the approval of the [County Commission]</u>." (Defs.' Ex. 12 at § 4 (emphasis added)). Thus, it is conceivable that the final authority to select a Director rested not with the Board of Elections, but rather with the County Commission. Moreover, the Board of Elections minutes clearly reflect that its members understood that they were empowered only to <u>recommend</u> an individual to the County Commission. (<u>See</u> Defs.' Ex. 19 ("After discussion, it was unanimously agreed that we will not release the name to be recommended."); <u>id</u> (noting that a motion was passed to "submit the name of Annie Bright to the Clayton County Commissioners for the position of [Director].")) Finally, although Members Bray, Gray and Rhodenizer have, through their affidavits, disclaimed any involvement in the selection process (<u>see</u> Bray Aff. [36-31] at ¶¶ 14-17; Gray Aff. [36-29] at ¶¶ 8-11; Rhodenizer Aff. [36-30] at ¶¶ 8-11), the County Commission minutes indicate that Commission members exercised their authority over the selection

39

process, voting to defer consideration of the Board of Elections' nominee until a

joint meeting could be held and the selection procedures discussed and

approved.  (<u>See</u> Defs.' Ex. 20 at ¶ 16; Defs.' Ex. 21 at ¶ 8; Defs.' Ex. 22.)

The Eleventh Circuit has repeatedly held that municipal liability under §

1983 is not appropriate where a subordinate official exercises discretion in

making a given decision, but the policymaking individual or entity retains the

power to review the exercise of that discretion.  In short, "[f]inal policymaking

authority over a particular subject area does not vest in an official whose

decisions in the area are subject to meaningful administrative review." <u>Quinn</u>,

330 F.3d at 1325 (quoting <u>Scala</u>, 116 F.3d at 1401); <u>see also</u> <u>Manor Healthcare</u>

<u>Corp. v. Lomelo</u>, 929 F.2d 633, 638 (11th Cir. 1991) (holding that mayor was

not the final policymaker with respect to zoning decisions where the city charter

provided that the city council could override the mayor's veto of zoning

ordinances); <u>Hill v. Clifton</u>, 74 F.3d 1150, 1152 (11th Cir. 1996) (accepting

concession that city police chief was not final policymaker with respect to

employment decisions where police chief's decisions could be reversed by the

city manager); <u>Martinez</u>, 971 F.2d at 713-15 (finding final policymaking

authority where "the City Manager's decision to hire or fire administrative

personnel is completely insulated from review"). However, on the record

before it, the Court cannot adequately ascertain either the scope of the County

Commission's involvement in the selection of Ms. Bright, or the degree to

which they independently reviewed the Board of Elections' decision.

What is more, Defendants, citing Turquitt v. Jefferson County, Ala., 137

F.3d 1285 (11th Cir. 1998), also contend that Clayton County lacked any

authority to control the Board of Elections in selecting the Director. (Defs.'

Reply in Supp. of Mot. for Summ. J. [58] at 4-5.) Unfortunately, this argument

is raised for the first time in Defendants' Reply Brief, and as such, the Court

will not consider it as a grounds for summary judgment at this time. See

Giddens v. Equitable Life Assur. Soc. of the U.S., 356 F. Supp. 2d 1313, 1325

n.7 (N.D. Ga. 2004); United States v. Ga. Dep't of Natural Res., 897 F. Supp.

1464, 1471 (N.D. Ga. 1995) ("This court will not consider arguments  raised for

the first time in a reply brief."). That said, the Court is clearly cognizant of the

importance of both properly establishing the limits of municipal liability and the

unique nature of the Board of Elections under State law, and as such, is willing

to further consider this issue.

AO 72A
(Rev.8/82)

In short, after reviewing Senate Bill 360, the statutory authorization for the creation of the Board of Elections and the selection of the Director, as well as the process actually implemented by the Board of Elections and the County Commission, the Court cannot determine, on the record before it, whether (1) the Board of Elections or the County Commission served as the final policymaker *vis-a-vis* the selection of the Director, or (2) if the County Commission served as the final policymaker, whether a majority of its members ratified the allegedly unconstitutional decision of the Board of Elections such that the imposition of municipal liability under § 1983 would be appropriate. Accordingly, Defendants' Motion for Summary Judgment on the issue of municipal liability under § 1983 is hereby **DENIED**.  However, based on the recognition that this case presents difficult and novel questions which were not adequately addressed in the instant motion, the Court hereby **GRANTS** Defendants leave to re-file a successive, fully developed motion for summary judgment on these issues.[10]  Should Defendants desire to so move, their motion

---

[10] In this regard, due to the complex and novel issues associated with this determination, the Court would view additional factual development, as well as robust and thorough briefing from both parties, to be of assistance.

42

shall be filed with this Court not more than twenty (20) days from the entry of this Order.

### b.  Individual liability

#### i.  Particular individuals

As discussed above, no genuine issue of fact exists as to whether Defendant Bolia acted with discriminatory intent.  Therefore, his Motion for Summary Judgment on all claims is hereby **GRANTED**.  With respect to Defendants Abdul-Salaam, Ash, and Thompson, however, genuine issues of material fact exist as to whether they improperly based their decision to select Ms. Bright over Plaintiff on her race.  As such, their Motion for Summary Judgment on Plaintiff's § 1983 claims against them in their individual capacity is hereby **DENIED**.

#### ii.  Qualified immunity

The remaining Defendants assert that they are entitled to summary judgment on qualified immunity grounds.  Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).  Officials are shielded "insofar as their conduct

AO 72A
(Rev.8/82)

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  The qualified immunity analysis consists of a two-step analysis.  First, the court addresses the "threshold question" of whether the facts as alleged, viewed in the light most favorable to the plaintiff, establish a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  Only if there is a constitutional violation does the court proceed to the second step to determine whether that right was clearly established.  <u>Id.</u>

A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.' "  <u>Vaughan v. Cox</u>, 316 F.3d 1210, 1212 (11th Cir. 2003) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).  While the fact patterns of prior cases used to show that a right is clearly established need not be "fundamentally similar" or even "materially similar," the salient question is whether the law at the time of the alleged violation gave officials "fair warning" that their acts were unconstitutional.

44

Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003) (quoting Hope v.

Pelzer, 536 U.S.730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).

Qualified immunity is a question of law for the court. Post v. City of Fort

Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).  The plaintiff opposing

summary judgment has the burden of showing that there is a genuine dispute of

material facts. Id.  It is not enough that plaintiff produce evidence which would

allow a fact-finder to find that the government official defendant was in reality

wrong about the facts, but the plaintiff must produce evidence that would allow

a fact-finder to find that no reasonable person in the defendant's position could

have thought the facts were such that they justified defendant's acts. Id.

Defendants seek qualified immunity solely on the basis that they did not

consider Plaintiff's race in selecting a Director, and instead, selected the most

qualified candidate.  This, of course, is the ultimate issue in the case and is of

little assistance in answering the question of whether they are entitled to

qualified immunity.   If proved, Plaintiff's allegations establish a constitutional

violation.  Because the right to be free from racial discrimination in selection

for employment was "clearly established" at the time of Defendants' decision,

see, e.g., Alexander v. Fulton County, 207 F.3d 1303, 1321 (11th Cir. 2000)

45

("[T]here can be no doubt that . . . it was clearly established that intentional discrimination in the workplace on account of race violated federal law."); Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1478 (11th Cir. 1991) (recognizing that "the equal protection right to be free from intentional racial discrimination" is "clearly  established"), Defendants' Motion for Summary Judgment on qualified immunity grounds is hereby **DENIED.**

## V.    Punitive Damages

Under § 1983, Plaintiff may not recover punitive damages against a governmental entity, or governmental officials sued in their official capacity. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); Colvin v. McDougall, 62 F.3d 1316, 1319 (11th Cir. 1995) (holding that sheriff sued in official capacity may not be held liable for punitive damages under § 1983).  Therefore, the County Defendants' Motion for Summary Judgment on the issue of punitive damages under § 1983 is hereby **GRANTED**.  As to the remaining Defendants, "[l]iability for punitive damages requires not merely a showing of intentional discrimination but a showing that [they] acted with 'knowledge that [they] may be acting in violation of federal law.' " Alexander, 207 F.3d at 1338 (quoting Kolstad v.

46

Am. Dental Ass'n., 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed.2d 494 (1999)).

This is a simple race-discrimination case.  There is nothing in the record to

indicate that Defendants were unaware that discrimination on the basis of race

is illegal or that Defendants operated under some legal misapprehension that

consideration of race in employment decisions would not violate federal law.

Accordingly, the Court finds no basis for granting Defendants' motion.

### Conclusion

Defendants' Motion for Summary Judgment [32] is hereby **GRANTED**

**IN PART and DENIED IN PART**.  Defendants are hereby **GRANTED leave**

**to re-file** a motion for summary judgment on the issues of municipal liability

under § 1983.   Should Defendants desire to so move, their motion shall be filed

with this Court not more than twenty (20) days from the entry of this Order.


**SO ORDERED** this __30th__ day of March, 2006.


/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE


47