**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

SONJA CASEY,                :
                                  :

        Plaintiff,          :
                                    :   CIVIL ACTION NO.
       v.                   :   1:04-CV-00871-RWS
                                    :

CLAYTON COUNTY, GA, et al,  :
                                    :

        Defendants.     :

## <u>ORDER</u>

Now before the Court is Defendants' Renewed Motion for Summary Judgment [62].  After considering the entire record, the Court enters the following Order.

### **Background**

The facts of this case are set forth in the Court's Order of March 30, 2006 and need not be recounted here.  It is sufficient for purposes of this Order to state that Plaintiff brought this action against Defendants Clayton County; its County Commissioners, Crandle Bray, Carl Rhodenizer, and Virginia Gray, each in their individual and official capacities; the Clayton County Board of Elections and Registration ("Board of Elections"); and Board of Elections

members Roberta Abdul-Salaam, Ruth Ashe, Bob Bolia, George Sligh, and Arthur Thompson, each in their individual and official capacities.  Plaintiff, a Caucasian female who was sixty years old at the time of the decision in question, alleges that her non-selection for the position of Clayton County Director of Elections was because of her race and age in violation of the Equal Protection Clause, 42 U.S.C. § 1981, Title VII, and the ADEA, and seeks monetary relief, including punitive damages, as well as equitable relief in the form of reinstatement and front pay.  After discovery, Defendants jointly moved for summary judgment on each of Plaintiff's claims.  (See Def.'s Mot. for Summ. J. [32].)

By Order entered March 30, 2006, this Court granted Defendants' Motion for Summary Judgment in part and denied it in part.  Specifically, the Court granted Defendants' Motion for Summary Judgment on

(1)     all claims against Defendants Bray, Rhodenizer, Gray and Sligh in their individual capacity (Order of March 30, 2006 at 10);

(2)     all claims against Defendants Bray, Gray, Ashe, Bolia, Abdul-Salaam, and Thompson in their official capacity on grounds that

these claims were redundant of her claims against the

governmental unit (id. at 11-12);[1]

(3)     Plaintiff's claims against all Defendants under the ADEA on

grounds that Plaintiff had failed to direct the Court to any evidence

that she was denied employment in favor of a significantly younger

individual, and thus, failed to make out a prima facie case of age

discrimination (id. at 12-14);[2]

---

[1] In granting Defendants Motion for Summary Judgment on Plaintiff's claims against the various Defendants in their official capacity as redundant of her claims against the governmental units, the Court omitted Defendants Sligh and Rhodenizer. Summary judgment in favor of these Defendants should have been granted on each of Plaintiff's claims for the same reason. Therefore, Part II.B of the Court's March 30, 2006 Order is hereby **AMENDED** to state that Defendants' Motion for Summary Judgment on Plaintiff's claims against Defendants Sligh and Rhodenizer in their official capacity is **GRANTED**.

[2] In her Response to Defendants' Renewed Motion for Summary Judgment, Plaintiff urges the Court to reconsider its prior ruling on this issue. The Court declines to do so. Contrary to Plaintiff's position, Defendants did in fact challenge her ability to make out a prima facie case of age discrimination. (See Defs.' Br. in Supp. of Mot. for Summ. J. [36] at 29-32 (arguing that age discrimination plaintiff may prove discrimination by direct, statistical or circumstantial evidence analyzed under McDonnell Douglas framework, and that "Plaintiff has not adduced any facts to support her claims of age discrimination through any of the methods established by the 11th Circuit, as she has not provided any direct, statistical or circumstantial evidence to support her claims.").) Thus, it was Plaintiff's duty to come forward with evidence supporting her age discrimination claim, and that Plaintiff failed to do. Moreover, even if the Court were to reconsider its decision that Plaintiff had failed to make out a prima facie case of age discrimination, summary judgment on her ADEA claim would remain appropriate. Quite simply, to the extent that Plaintiff was the victim of unlawful discrimination, all of the

(4)     Plaintiff's claims against all Defendants under § 1981 on grounds

that § 1983 provides the exclusive remedy against state actors for

violations of the rights contained in § 1981 (<u>id.</u> at 14-15);

(5)     Plaintiff's claims under Title VII against Defendants Abdul-

Salaam, Ashe, Bolia, and Thompson in their individual capacity on

grounds that Title VII affords relief against the employer, and not

the individual employees whose actions violate the Act (<u>id.</u> at 17);

(6)     Plaintiff's claims against Defendant Bolia in his individual

capacity under § 1983 on grounds that no genuine issue of fact

existed as to whether he acted with discriminatory intent (<u>id.</u> at

43); and

(7)     Plaintiff's claims for punitive damages under § 1983 against

Clayton County and the Board of Elections on grounds that

punitive damages are not available against a governmental entity

(<u>id.</u> at 46).

---

evidence in this case points to the conclusion that that discrimination was on the basis of her race.  Accordingly, no reasonable juror could conclude, on the evidence presented, that Defendants impermissibly refused to select Plaintiff because of her age.  As such, summary judgment in Defendants' favor on Plaintiff's ADEA claim was clearly warranted.

4

The Court denied Defendants' Motion insofar as it sought summary judgment on

> (1)    Plaintiff's claims under Title VII against Clayton County and the Board of Elections  (id. at 16-33);
>
> (2)    Plaintiff's claims under § 1983 against Defendants Clayton County and the Board of Elections (id. at 33-43);
>
> (3)    Plaintiff's claims under § 1983 against Defendants Abdul-Salaam, Ashe, and Thompson in their individual capacities (id. at 43); and
>
> (4)    the issue of qualified immunity as it related to Defendants Abdul-Salaam, Ashe, and Thompson (id. at 43-46).

With respect to Defendants Clayton County and the Board of Elections, however, the Court recognized that there were "thorny" issues related to municipal liability which had not been adequately addressed.  For example, the Court explained that it is well-established that a municipality, such as Clayton County, may only be held liable for a discriminatory employment decision under § 1983 where (1) the public official or body making the unconstitutional decision possesses final authority to establish municipal policy with respect to the action ordered, or (2) a subordinate public official or body makes an

5

unconstitutional decision, and that decision, along with the unconstitutional basis for it, is then ratified by an official or body with final policy-making authority.  (See id. at 33-37.)  Yet, upon reviewing both the text of Senate Bill 360, which statutorily authorized the creation of the Board of Elections, as well as the process by which the Board of Elections and the Clayton County Commission selected the Director, the Court was unable to determine, on the record before it, "whether (1) the Board of Elections or the County Commission served as the final policymaker *vis-a-vis* the selection of the Director, or (2) if the County Commission served as the final policymaker, whether a majority of its members ratified the allegedly unconstitutional decision of the Board of Elections such that the imposition of municipal liability under § 1983 would be appropriate."  (Id. at 42.)  Additionally, the Court explained that it would not consider Clayton County's contention that it could not be held liable under § 1983 on the ground it lacked any authority to control the Board of Elections in selecting the Director because that issue was raised for the first time in Defendants' Reply Brief.  Nevertheless, the Court, being "clearly cognizant of the importance of both properly establishing the limits of municipal liability and unique nature of the Board of Elections under State law," stated that it was

6

"willing to further consider this issue."  (Id. at 41.) To that end, the Court

granted Defendants leave to file a second motion for summary judgment on

these issues.  Defendants have now filed their Renewed Motion for Summary

Judgment, which Plaintiff opposes, and the Court turns now to resolve that

Motion.

## Discussion

## I.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment

shall be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.' "

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden then shifts to the non-movant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The applicable substantive law

identifies which facts are material.  Id. at 248.  A fact is not material if a dispute

over that fact will not affect the outcome of the suit under the governing law.

Id.  An issue is genuine when the evidence is such that a reasonable jury could

return a verdict for the non-moving party.  Id. at 249-50.

      In determining a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.

Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable,

8

or is not significantly probative, summary judgment may be granted."

Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

## II.      Defendants' Renewed Motion for Summary Judgment

In their Renewed Motion for Summary Judgment, Defendants raise four separate, but somewhat related, arguments on the question of whether Clayton County and the Board of Elections may be held liable under either § 1983 or Title VII.  First, Defendants contend that the Board of Elections is an entity of the State of Georgia over which Clayton County exercises no control, and thus, imposing municipal liability under § 1983 would be inappropriate.  (Br. in Supp. of Def.'s Renewed Mot. for Summ. J. at 6-12 [hereinafter Def.'s Br.].) Second, Defendants argue that Clayton County did not act as Plaintiff's employer within the meaning of Title VII, and thus, cannot be held liable for a violation of that Act.  (See id. at 12-13.)  Third, Defendants contend that Clayton County cannot be held liable under a ratification theory because Plaintiff has failed to adduce evidence that the County Commission acted with

9

discriminatory animus.  (<u>See</u> <u>id.</u> at 13-15.)  Finally, Defendants contend that

"[s]ince the Board of Elections acts on behalf of the State, any . . . claim

brought against the Board of Elections . . . is barred by Eleventh Amendment

immunity.  (<u>See</u> <u>id.</u> at 15-16.)  The Court addresses each Defendants' various

contentions, although in a different order.

### A.    Employer Within the Meaning of Title VII

Defendants, relying on <u>Lyes v. City of Riviera Beach</u>, 166 F.3d 1332

(11th Cir. 1999) (en banc), argue, for the first time in their Renewed Motion for

Summary Judgment, that Clayton County is not Plaintiff's employer for

purposes of Title VII because it does not "control the fundamental aspects of

the employment relationship that gave rise to the claim."  (Def.'s Br. at 12-13.)

The Court, however, declines to consider this ground as a basis for summary

judgment.  At no point in this litigation has Clayton County argued that it could

not be held liable under Title VII because it was not Plaintiff's employer within

the meaning of that Act, and the Court, in denying Defendants' prior Motion for

Summary Judgment, did not grant Defendants leave to file a successive motion

for summary judgment on this issue.  Moreover, Defendants have failed to point

to any reason why this issue was not raised previously in this litigation.  In the

10

absence of such an explanation, and because raising new issues in piece-meal motions for summary judgment has the potential to unduly burden and vex opposing parties, the Court declines to consider this argument.[3]  See Allstate Fin. Corp. v. Zimmerman, 296 F.2d 797, 799 (5th Cir. 1961) (explaining that "[w]hile we certainly do not approve in general the piecemeal consideration of successive motions for summary judgment, since defendants might well normally be held to the requirement that they present their strongest case for

---

[3] While the Court declines to consider this ground for summary judgment, it notes that two or more state or local governmental entities will be treated as a single employer under Title VII when one entity exerts or shares control over the fundamental aspects of the employment relationships of another entity, to such a substantial extent that it clearly outweighs any presumption that the entities are distinct.  Lyles, 166 F.3d at 1345.  Here, there is significant interrelatedness between Clayton County and the Board of Elections. For example, the Board of Elections is generally responsible for selecting the Director, however, the Director is to hired by the Board from a job description drawn in concert with the Clayton County personnel office, the County Commission must approve the Board's selection, and in the event the Board fails to appoint a director (as they did in this case), the County Commission appoints a Director to serve on an interim basis.  S.B. 360 § 4.  Similarly, while the Board of Elections is responsible for establishing the Director's duties, S.B. 360 § 13(a), supervising the Director, and may remove the Director with or without cause, S.B. 360 § 4(a), the statute provides that all employees of the Board are considered employees of Clayton County "for purposes of pay, benefits, sick leave, vacation, and other purposes," S.B. 360 § 16, and that the Director is to be paid a salary set by the County Commission and payable from county funds, S.B. 360 § 4(a).   On these facts, the Court would likely conclude that, at a minimum, a genuine issue of fact exists as to whether Clayton County should be considered Plaintiff's employer for purposes of Title VII.  Therefore, Plaintiff's Title VII claims against Clayton County must be allowed to proceed.

summary judgment when the matter is first raised," district courts have discretion to consider successive motions for summary judgment).

### B.      Ratification

Defendants contend that Clayton County cannot be held liable under a ratification theory because plaintiff has failed to demonstrate that a majority of the County Commissioners ratified the allegedly unconstitutional basis for the Board's decision.  (Def.'s Br. 13-15.)  The Court agrees.

As the Court explained in its prior order denying Defendants' Motion for Summary Judgment:

> a municipality may be held liable under § 1983 under a ratification theory.  "County liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."  Matthews[ v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002)].  As the Eleventh Circuit has repeatedly made clear, however,
>
> > [t]he final policymaker . . . must ratify not only the decision itself, but also the unconstitutional basis for it. Gattis v. Brice, 136 F.3d 724, 727 (11th Cir. 1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision

12

and the basis for it.' ") (emphasis in original)
(quoting [City of St. Louis v. Praprotnik, 485 U.S.
112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107
(1988)]).

Id. at 1297-98; see also Campbell[ v. Rainbow City,
434 F.3d 1306, 1313 (11th Cir. 2006)] ("[I]n order for
a municipality to be liable under a ratification theory,
the final policymaker must ratify not only the decision
of its member with an unconstitutional motive, but
also the unconstitutional basis itself.").

(Order of March 30, 2006 at 37-38.)  Where policymaking authority rests with

an entity, municipal liability is inappropriate unless the plaintiff shows that the

entity itself acted with an unconstitutional motive.  Matthews, 294 F.3d at 1297.

Thus, to prevail on a ratification theory, a plaintiff must establish that a majority

of the policy makers voting for the challenged action were aware of, and

ratified, the allegedly unconstitutional basis for the action.  See id. at 1298

(holding municipal liability inappropriate where only one of three county

commission members voting for challenged action was actually motivated by

unconstitutional considerations); Mason v. Village of El Portal, 240 F.3d 1337,

1340 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three

members of the council who voted against reappointing [p]laintiff shared the

illegal motive.").

13

In this case, Plaintiff has failed to come forward with sufficient evidence to create a genuine issue of fact as to whether a majority of the Clayton County Commission voting to approve the Board of Elections' nominee was actually motivated by unconstitutional considerations of race.  In her deposition, Plaintiff testified that just prior to her non-selection, she had a meeting with County Commissioners Bray and Matthews during which she was informed that her prospects did not "look good."  (Casey Depo. at 74.)  In response she asked whether they were "getting the pressure from the black community to put a black in," and both responded that they were.  (Id.)  Plaintiff further testified that Commissioner Bray informed her that, in light of this pressure, "it would just be better for [her] to resign [as Interim Director] and let this die down." (Id. at 104.)  Finally, Plaintiff testified that she had a conversation with Commissioner Griswell in which she was informed that he was both "aware of the race-involved situation," and that he wasn't going to vote for it.  (Id. at 104.) Relying on this evidence, plaintiff argues that "at least three members of the Board of Commissioners were aware that racial considerations infected the Board of Elections selection process," and yet, the Board of Commissioners voted to approve her non-selection.  (Pl.'s Br. at 12.)

14

This evidence, however, is insufficient to establish that the County

Commission ratified the allegedly unconstitutional decision of the Board of

Elections.  The vote to approve the Board of Elections' nominee for the position

of Director was 3–2, with Commissioners Bray, Rhodenizer, and Gray voting

for the Board of Elections' nominee, and Commissioners Griswell and

Matthews voting against the nominee.  Thus, while Plaintiff has presented

evidence that at least three members of the County Commission were aware that

her non-selection was because of her race, only one of those three members

actually voted to approve the Board's nominee.  Moreover, Plaintiff has

conceded that she has no evidence that Commissioners Rhodenizer and

Gray—the other two members who voted to approve the Board's

decision—impermissibly discriminated against her on the basis of race.  (See

Pl.'s Br. in Resp. to Defs.' Mot. for Summ. J. [47-1] at 1 n.1.)  Plaintiff's

evidence, therefore, tends to prove that, at most, one of the three members of

the County Commission who voted for the Board of Elections' nominee was

actually motivated by race.  Under Matthews and Mason, this evidence falls

short of establishing that the County Commission, as an entity, acted in an

unconstitutional manner.  Consequently, Clayton County may not be held liable

under a ratification theory, and insofar as Defendant Clayton County moves for summary judgment on this issue, that motion is **GRANTED**.

### C.   Board of Elections as Policymaker for Clayton County

As the Court has previously stated, government entities may be held liable under § 1983 only for the execution of a governmental policy or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  " 'A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . .  A custom is a practice that is so settled and permanent that it takes on the force of law.' " Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997)).  "[O]nly municipal officers or groups who have final policymaking authority may subject the municipality to § 1983 liability."  Campbell v. Rainbow City, 434 F.3d 1306, 1312 (11th Cir. 2006). "To determine if someone is a final policy maker, we look not only to 'state and local positive law,' but also 'custom and usage having the force of law.' " Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1292 (11th Cir. 2004 (quoting McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir. 1996)).

16

Whether an individual or entity possesses final policymaking authority is a question of law for the Court.  See Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).

In this case, Plaintiff has failed to come forward with sufficient evidence to create a genuine issue of fact as to whether the County Commission acted with discriminatory intent in approving the Board of Elections' nominee.  See supra Part B.  Therefore, Clayton County may only be held liable under § 1983 if the Board of Elections constitutes a final policymaker for the county with respect to employment decisions.  In their Renewed Motion for Summary Judgment, Defendants contend that it does not.  For the reasons that follow, the Court agrees that Clayton County may not be held liable as an entity for the Board of Elections' hiring decision.

As an initial matter, the Court has serious reservations as to whether municipal liability would be appropriate, given that it does not appear that Clayton County has delegated any authority for hiring decisions to the Board of Elections.  See Hollman, 370 F.3d at 1291 (explaining that county may be held liable for decisions of subordinate official or entity where municipal governing body delegates final decisionmaking authority in a particular area); Matthews,

17

294 F.3d at 1297 ("Local government liability can exist when someone with final policymaking authority delegates that authority to someone else. But, the delegation must be such that the decision is not subject to review by the policymaking authority.").  The Court need not determine, however, whether the absence of any delegation of authority to the Board of Elections is sufficient to entitle Clayton County to summary judgment because under applicable Eleventh Circuit authority it is clear that the Board of Elections cannot be a final policy maker for Clayton County with respect to hiring the Director.  As the Eleventh Circuit has explained:

> A member or employee of a governing body is a final policy maker only if his decisions have legal effect without further action by the governing body, see Matthews, 294 F.3d at 1297 ("[E]ven if [member of governing entity] was given the power to select which positions would be eliminated . . . his selections still had to be accepted by a majority of the board. As such, [that member] never possessed final policymaking power himself. . . ."), and if the governing body lacks the power to reverse the member or employee's decision, see Quinn v. Monroe Cty., 330 F.3d 1320, 1326 (11th Cir. 2003) ("Because the [governmental entity] has the power to reverse any termination decision made by [individual government official], he is not a final policymaker with regard to termination decisions at the library.").

<u>Hollman</u>, 370 F.3d at 1292.

Here, it is undisputed that the Board of Elections had the power only to recommend an individual to the County Commission, which then has the authority to accept or reject that individual. Because the County Commission must approve the Board's hiring decision, the Board's decision not to hire Plaintiff for the position of Director was without legal effect until the County Commission acted to approve that decision. Moreover, the County Commission had full authority to reverse the Board's decision, and to reject their recommendation. Thus, under <u>Hollman</u> and <u>Matthews</u> the Board of Elections cannot be considered a final policymaker for Clayton County.

In sum, Clayton County cannot be held liable under § 1983 based upon a ratification theory because Plaintiff has failed to come forward with sufficient evidence to create a genuine issue of fact as to whether a majority of the County Commissioners ratified the allegedly unconstitutional motive of the Board of Elections. Additionally, Clayton County cannot be held liable under § 1983 for the Board of Elections' decision because the Board of Elections is not a final policymaker for Clayton County. Accordingly, Defendants' Renewed Motion

AO 72A
(Rev.8/82)

for Summary Judgment on Plaintiff's claims under § 1983 is **GRANTED** as to

Clayton County.

### D.  Eleventh Amendment Immunity

Defendant argues that the Eleventh Amendment bars "any official

capacity claim" against the Clayton County Board of Elections, because the

Board of Elections acts as an arm of the state.  With respect to Plaintiff's claims

under Title VII, the Court disagrees; as it relates to Plaintiff's claims under §

1983, the Court, for the reasons set forth below, declines to grant Defendants'

Renewed Motion for Summary Judgment in favor of revisiting the issue at

trial.[4]

---

[4] While Defendants' Eleventh Amendment immunity defense is directed to Plaintiff's official capacity claims, the Court makes clear that the Board of Elections' Eleventh Amendment immunity contentions are irrelevant to Plaintiff's claims against Clayton County and the members of the Board of Elections in their individual capacities. First, the Eleventh Amendment applies to states and state officials but not to municipal corporations, counties, or other political subdivisions of the state.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). Thus, the Eleventh Amendment has no bearing on Plaintiff's claims against Clayton County.  Second, the Eleventh Amendment is no bar to claims against state officials in their individual capacities.  Hafer v. Melo, 502 U.S. 21, 30-31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983."); Jackson v. Georgia Dept. of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994).  Therefore, just as it is no bar to Plaintiff's claims against Clayton County, the Eleventh Amendment does not preclude Plaintiff's claims against Defendants Abdul-Salaam, Ashe, and Thompson in their individual capacities.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. As a general matter, this Amendment guarantees "that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). The Eleventh Amendment does not, however, bar suits only against states; it also bars suits brought in federal court against defendants acting as an "arm of the State," which includes agents and instrumentalities of the State even though these entities are not labeled a "state officer" or "state official." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. To determine whether a particular defendant acts as an arm of the state while engaged in the relevant function, courts in the Eleventh Circuit consider the following four factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the

entity's funds; and (4) who bears financial responsibility for judgments entered against the entity.  Abusaid v. Hillsborough County Bd. of County Comm'rs, 405 F.3d 1298, 1304 (11th Cir. 2005).  Against this backdrop, the Court considers Defendants' assertion of immunity under the Eleventh Amendment as it relates to Plaintiff's claims under Title VII and § 1983.

2.    Plaintiff's Title VII claim

Freedom from suit under the Eleventh Amendment is not unlimited, and Congress may abrogate Eleventh Amendment immunity "when it both unequivocally intends to do so and act[s] pursuant to a valid grant of constitutional authority."  Garrett, 531 U.S. at 363 (quotation omitted).  The Supreme Court has recognized that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment."  Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976).  Congress, therefore, "may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power."  Garrett, 531 U.S. at 364.

It is well-established that Congress validly abrogated the states' sovereign immunity in enacting Title VII.  See, e.g., Fitzpatrick, 427 U.S. at

22

456; <u>Allen v. Ala. State Bd. of Educ.</u>, 816 F.2d 575, 577 (11th Cir. 1987) ("in

civil actions invoking Title VII, state defendants lack eleventh amendment

protection"); <u>Nanda v. Bd. of Trustees of Univ. of Ill.</u>, 303 F.3d 817, 828-31

(7th Cir. 2002). Therefore, Plaintiff's Title VII claim against the Board of

Elections clearly is not barred by the Eleventh Amendment.

   3. <u>Plaintiff's § 1983 claims</u>

  Congress did not abrogate states' sovereign immunity through enacting §

1983.  <u>Quern v. Jordan</u>, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L. Ed. 2d 358

(1979); <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986).  Thus, with

respect to Plaintiff's claims under § 1983, the Court must determine whether the

Board of Elections was acting as an "arm of the State" such that it is entitled to

immunity under the Eleventh Amendment.

  As explained above, whether an entity is acting as an arm of the state

entitled to Eleventh Amendment immunity must be assessed in light of the

specific function the entity was engaged in when taking the actions which gave

rise to the claims.  <u>Manders</u>, 338 F.3d at 1308.  In this case, Plaintiff's claims

arise out of her non-selection for the position of Clayton County Elections

Director.  Accordingly, the proper inquiry is whether the Board of Elections acts as an arm of the state in hiring for that position.

When that function is considered, the question of whether the Board of Elections acted for the state or the county is, quite simply, a perplexing one. Certainly, if the Court were to confine its inquiry to whether the Board acts as an arm of the state for purposes of conducting elections in general, there can be little doubt that Eleventh Amendment immunity would attach.  The Board of Elections was created by the Georgia General Assembly pursuant to its statutory authority, and vested with broad powers to manage the conduct of elections on behalf of the state.  See S.B. 360 § 1.  To that end, the State exercises significant control over the Board's election-related activities.  The state fixes the duties of the Board, see S.B. 360 § 8 (vesting Board of Elections with "the powers and duties of the former Clayton County election superintendent relating to the conduct of primaries and elections," as well as "the powers and duties of the Clayton County Board of Registrars relating to the registration of voters and absentee balloting procedures."); O.C.G.A. §§ 21-2-70, -212 (setting forth duties of election superintendents and registrars respectively), establishes the minimum qualifications for Board members, see

24

S.B. 360 § 3, sets certification and minimum training requirements, and

disciplines officials who fail to comply with those requirements, <u>see</u> O.C.G.A. §

21-2-100 (requiring at least one member of county board of elections or

designee of board to attend minimum of 12 hours training annually as selected

by Secretary of State, and providing that failure to attend training may result in

imposition of fines by State Board of Elections); O.C.G.A. § 21-2-101

(requiring designee of board of elections charged with daily operations of such

board to complete a certification program approved by the Secretary of State,

and providing that Secretary of State, in his or her sole discretion, may waive

certification requirement in whole or part).  Moreover, the County's control

over the Board of Elections is generally attenuated.  For example, although each

Board member is appointed by an individual Clayton County Commissioner,

<u>see</u> S.B. 360 § 3, it appears that the governing authority lacks the power to

remove Board members once appointed.  <u>See</u> S.B. 360 § 5(2) (providing that

Board of Elections members are subject to removal, for cause, by the Chief

Judge of the Superior Court of Clayton County).  Similarly, the Board, and not

the County, has the power to control its organization and elect its officers,

determine its procedural rules and regulations, adopt bylaws, specify the

AO 72A
(Rev.8/82)

functions and duties of its employees, and take any other actions appropriate to the management of its affairs, provided that these actions do not conflict with state law.  S.B. 360 § 13.  Finally, although S.B. 360 purports to grant the County Commission budgetary control, the Court questions the true extent of the County's budgetary authority in light of the county's apparent obligations under state law regarding the conduct of elections, and the relationship between those obligations and citizens' ability to exercise their fundamental right to vote.

But, it is not the Board's management of elections which is at issue here.  Rather, it is the Board's hiring practices with respect to the Director of Elections which must be considered, and in that respect, the picture of whether the Board acted as an arm of the state is much more murky.  For instance, Senate Bill 360 provides that all employees of the Board shall be deemed employees of Clayton County for purposes of pay, benefits, sick leave, vacation, and otherwise.  S.B. 360 § 16.  The Director is to be hired from a job description drawn by the Board acting in concert with the County personnel office, and is to be paid a salary set by the County Commission and payable from county funds.  S.B. 360 § 4.  While the Director serves at the pleasure of

26

the Board, the County Commission is granted veto power over any person nominated by the Board for the Director position, and from the evidence in the record, actively participated in the selection process in this case.  Id.

While the Court is inclined to believe that on these facts, Eleventh Amendment immunity is not warranted,[5] the Board of Elections is a unique entity under Georgia law, and unlike in the case of county sheriffs, the Court lacks the benefit of any state authority to guide its inquiry.  Consequently, the Court elects to deny Defendants' Motion for Summary Judgment on this issue, and consider this matter at the time of trial and after hearing from the parties.[6]

_____

[5] Of course, the Court's discussion above does not address certain of the four Eleventh Amendment factors.  The Court notes, however, that the source-of-funds and responsibility-for-judgment factors appear to militate against Eleventh Amendment immunity.  First, with respect to the source of funds, all funds expended by the Board of Elections, including those funds necessary to hire the Director and conduct operations, are payable by Clayton County.  Second, with respect to which entity, the state or the county, would bear financial responsibility for any adverse judgment, the parties have not directed the Court to any authority which would indicate that either party would be obligated to pay.  Nevertheless, as Clayton County must pay for the Board's operations, to the extent a judgment would be paid out of the Board's general operating budget, it would appear that it would be indirectly paid by Clayton County.

[6] The Supreme Court, in considering whether a sheriff was a county policymaker, observed that state law will not "always speak with perfect clarity" and that "[i]t may not be possible to draw an elegant line that will resolve this conundrum."  McMillian v. Monroe County, 520 U.S. 781, 793, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 125, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)).  This case is no exception to that observation.

Moreover, in light of the fact that Plaintiff's Title VII claims against both the Board of Elections and Clayton County remain viable, and the elements of proof and analytical framework for Title VII and § 1983 claims are identical, Defendants will suffer no prejudice if this claim remains in this action. Accordingly, Defendants' Motion for Summary Judgment based upon Eleventh Amendment immunity is hereby **DENIED**.

### Conclusion

Defendants' Renewed Motion for Summary Judgment [62] is hereby **GRANTED IN PART and DENIED IN PART**.  Defendants' Motion is granted as to Plaintiff's claims against Clayton County under § 1983; Defendants' Motion is denied in all other respects.  Part II.B of the Court's March 30, 2006 Order is hereby **AMENDED** to state that Defendants' Motion for Summary Judgment on Plaintiff's claims against Defendants Sligh and Rhodenizer in their official capacity is **GRANTED**.  The parties are **DIRECTED** to file their proposed consolidated pretrial order not later than twenty (20) days from the date of this Order.

28

**SO ORDERED** this __14th__ day of March, 2007.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)